15BJ

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

 SCANNED

#3

NO FEE/
NO IFP

David Antonio Lemus                          Case No.

    Petitioner                            1:16-00004

                           3:21-cv-58

    V.

                           RECEIVED

United States of America

Bureau of Prisons                            APR 01 2021

V. Moser, Warden, FCI Loretto                CLERK U.S. DISTRICT COURT
                                 WEST. DIST. OF PENNSYLVANIA
    Respondents


Motion For Release on 8-30-21 Pursuant to 28 U.S.C. 2241

Requiring Bureau of Prisons To Apply Time Credits Earned

Under The First Step Act


Comes now, David Antonio Lemus, Petitioner, Pro-Se, seeking an

Order pursuant to 28 U.S.C. Section 2241, requiring the Bureau of

Prisons (BOP) to apply all earned time credits to which Petitioner

is entitled under the First Step Act (FSA) to his current sentence

and granting him release to home confinement on August 30,2021.


Jurisdiction and Venue


This Court has jurisdiction over this matter pursuant to 28 U.S.C.

Section 2241 ("...a prisoner's challenge to his eligibility for

placement in home confinement is properly brought as petition for writ of habeas") See <u>Woodall v. Fed. Bureau of Prisons</u>, 432 F. 3d 235, 238-39 (3rd Cir. 2005); <u>Briley v. Ortiz</u>, No. 17-cv-3535, 2017 U.S. Dist. LEXIS 155075, 2017 WL 4228059 (D. N.J. Sept. 22, 2017). Petitioner's place of incarceration is FPC Loretto located in the Western District of Pennsylvania. Consequently, jurisdiction and venue are proper in this district because Petitioner challenges the duration of his confinement; <u>Leamver v Fauver</u>, 28 F. 3d 532, 542 (3rd Cir. 2002) and Petitioner is incarcerated in this district.

## Exhaustion of Administrative Remedies

While there is an administrative remedy exhaustion requirement applicable to petitioner for writ of habeas corpus under 28 U.S.C. Section 2241, there are also exceptions to that requirement. See <u>Cerverizzo Yost</u>, 380 F. App'x 115, 116 (3rd Cir. 2010) (citing <u>Woodall v. Fed. Bureau of Prisons,</u> 432 F. 3d 235, 239, n. 2 (3rd Cir. 2005); <u>Shandelmier v. Cunningham</u>, 819 F. 2d 52, 53 (3rd Cir. 1986)); <u>Gambio v. Morris</u>, 134 F. 3d 157, 171 (3rd Cir. 2005); (Roth J. concurring). In the instant case, as in others, the matter involves statutory construction analysis which is exempt from the exhaustion requirement. See <u>Coleman v Parole Comm'n</u>, 644 F. App'x 159, 162 (3rd Cir. 2016)("exhaustion is not required with regard to claims which turn only to statutory construction")(citing <u>Harris v. Martin</u>, 792 F. 2d 52, 54 (3rd Cir. 1986). Thus there is no exhaustion requirement to proceed in this

matter.

## Decision or Action Being Challenged

Petitioner brings this instant petition and challenges how his
sentence is being carried out, calculated, or credited by prison
or parole authorities (for example, revocation or calculation of
good time credits).

Petitioner is challenging the judgement of conviction entered by
the Honorable Judge Trauger of the United States District for The
Middle District of Tennesee

The Court imposed a sentence of 105 months imprisonment on the
charges in his case. Petitioner began serving his sentence on
6/02/2016.

Enacted on December 21, 2018, The FSA was the result of a
bipartisan legislative effort to moderately overhaul the criminal
justice system.

Congress aimed to enhance public safety by improving the
effectiveness and efficiency of the federal prison systems with
offender risk and needs assessment, individual risk reduction
incentives and rewards, and risk and recidivism reduction. HR Rep.
No. 115-669 at 22 (2018) See United States v. Simmons 375 F. Supp.
3d 379 (2nd Cir. 2019). The Act states as follows:

3

Not later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website a risk and needs assessment system (referred to in this subchapter as the "System"), which shall be used to--

(1) determine the recidivism risk of each prisoner at part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidiivism;

(2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner,

(3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);

(4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;

(5) reassign the prisoner to appropriate evidence-based recidivism

reduction programs or productive activities based on the revised
determination to ensure that--

(A) all prisoners at each risk level have a meaningful opportunity
to reduce their classification during the period of incarceration;

(B) to address the specific criminogenic needs of the prisoner;
and

(C) all prisoners are able to successfully participate in such
programs;

(6) determine when to provide incentives and rewards for
successful participation in evidence-based recidivism reduction
programs or productive activities in accordance with subsection
(e);

(7) determine when a prisoner is ready to transfer into prerelease
custody or supervised release in accordance with section 3624; and

In carrying out this subsection, the Attorney General may use
existing risk and needs assessment tools, as appropriate;

See 18 U.S.C. 3632(a)(1)-(8).

The BOP, upon it's initial assessment of Petitioner, classified
him using the Prisoner Assessment Tool Targeting Estimated Risk

and Need (PATTERN) tool. Petitioner was determined to have a minimum risk of recidivism. Petitioner has been successfully participating in the Act's authorized Evidence Based Recidivism Reduction Programming and Productive Activities since inception of the FSA on 12/21/2018.  Since 12/21/2018 Petitioner has had four assessments all classifying him as minimum risk recidivism level.

The ACT states:

(A) In general. A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence based recidivism reduction programming or productive activities, shall earn time credits as follows:

(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(ii) A prisoner determined by the Bureau of Prisons, to be at a minimum or low risk for recidivating, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C.A. §3632(d)(4)(A).

As a result of Petitioner's risk assessment, he should receive 15

6

days of time credit for each 30 days in the activities. The Act states further that "[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied **toward time in prerelease custody or supervised release**. The Director of the Bureau of Prisons shall transfer eligible prisoner, as determined under section 3624(g), into prerelease custody or supervised release".

Furthermore, under the federal sentencing guidelines "[i]f the Sentencing Court included as part of the prisoner's sentence a requirement that the prisoner be placed on a term of Supervised Release after imprisonment...the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of Supervised Release at an earlier date...based on the application of time credits under Section 3632". 18 U.S.C. §3521(g)(3).

Petitioner's sentence included three years of Supervised Release and under application of the Act, makes transfer to Supervised Release the highest application of earned time credits.

Additionally, §3632(d)(6) of the FSA provides: "In addition, the incentives described in this Subsection shall be in addition to any other rewards or incentives for which a prisoner is eligible." Petitioner, as stated, has received a 105 month sentence of incarceration. Pursuant to the Act, Petitioner is entitled to 54 days per sentenced year as good time credit; this means that

Petitioner is entitled to 472 days credit for good time.

Petitioner has been completing any programs offered to him by the BOP and has completed all productive activities assigned to him by the BOP since the inception of the FSA on 12/21/2018. Petitioner is entitled to the full fifteen day credit under the act, as of April 20, 2021, Petitioner has earned 420 days. (14 months times 15 days per month).

In addition to completing all productive activities assigned to Petitioner by the BOP every day, Petitioner is currently enrolled in 11 classes offered by the BOP. Also, Petitioner is currently enrolled in the Auto Tech vocatinal training program. This training program takes only 6 inmates per six month period. This program is a full time program, 40 hours per week. Classes began on 1/13/21.

The Act States that:

(i) A prisoner shall earn 10 days of time credits for every 30 days of successful **participation** in evidence-based recidivism reduction programming or productive activities.

(ii) A prisoner determined by the Bureau of Prisons, to be at a minimum or low risk for recidivating, shall earn an additional 5 days of time credits for every 30 days of successful **participation** in evidence-based recidivism reduction programming or productive

activities.

Since Petitioner is continuing to **participate** in both productive
activities assigned to him by the BOP and in classes offered by
the BOP, Petitioner will continue to earn good time credits at a
rate of 15 days per 30 days until he is released to home
confinement.

Per the Congressional Research Service of The First Step Act of
2018: An overview on page 6 states "A prisoner who is required to
serve a period of supervised release after his/her term of
incarceration and has earned time credits equivalent to the time
remaining on his/her sentence can be transferred directly to
supervised release if the prisoner's latest reassessment shows
that he/she is a minimum or low risk to recidivate. However, BOP
cannot allow a prisoner to start serving a period of supervised
release more than 12 months before he/she would otherwise be
eligible to do so. If a prisoner has earned more than 12 months of
additional time credits, the amount in excess of 12 months would
be served in prerelease custody."

Thus, in Petitioner's current situation, 365 days of his earned
time credits should be applied to additional supervised release
thus bringing his supervised release total to four years. The
additional 55 days, and any other earned time credits that
Petitioner earns prior to his release, shall be added to his
prerelease time. Petitioner is entitled, per the second chance

9

act, 10.5 months of home confinement.The start date for his home
confinement is 8/30/21. The Second Chance Act states:

(1) In General. The Director of the BOP shall, to the extent
practicable, ensure that a prisoner serving a term of imprisonment
spends a portion of the final months of that term (not to exceed
12 months), under conditions that will afford that prisoner a
reasonable opportunity to adjust to and prepare for the reentry of
that prisoner into the community. The authority provided by this
subsection may be used to place a prisoner in home confinement..."
Section 3624(c) of Title 18.

Since Petitioner's total sentence is 105 months, 10% of that is
10.5 months. §3632(d)(6) of the FSA provides: "In addition, the
incentives described in this Subsection shall be in addition to
any other rewards or incentives for which a prisoner is eligible."
Thus,if the BOP awards Petitioner any less than the maximum
allowed under the Second Chance Act in addition to his earned time
credits it is violating the FSA.

 Since 12/21/2018 Petitioner has completed 24 classes offered by
the BOP.  In addition the Petitioner is currently enrolled in 11
classes offered by the BOP. These classes are scheduled to be
completed the last week of July 2021. In addition, the Petitioner
is enrolled in GED classes 2 hours a day and 8 hours a day for
Auto Tech Vocational train program. Petitioner has been informed
that the BOP will be offering additional classes, which at that

time, Petitioner will participate in all classes offered to him by
the BOP. The FSA specifically states that vocational training
programs are always considered productive activities:

As of this date, The Bureau of Prisons has failed, despite
repeated and numerous requests, to provide any prisoner, including
Petitioner with any calculation of time credits. The BOP, under
the Trump Administration, proposed an interpretation on how time
credits were to be calculated. The period for public comments on
those proposed interpretations expired on 1/26/21 some six days
after President Biden was sworn into office. It is Petitioner's
understanding that all proposed guidelines, including the BOP's
proposed guidelines governing the FSA, that were not in effect
prior to the Biden administration taking office, were put on hold
via an executive order signed by President Biden, for the Biden
Administration to review. As a result, Petitioner is unable to
appropriately challenge the determination of the Bureau of
Prisons, as they refuse to make any determination. This matter
must be resolved in the near future because if the Bureau
continues to fail in its duties, the Petitioner is likely to be
incarcerated for longer than is proper under the statutes.

Case Law Supporting Immediate Application
Of First Step Act Earned Time Credits
Earned From 12/21/2018 to present

Goodman v Ortiz No. CV 20-7582 (RMB),

11

2020 WL 5015613 (D. N.J. Aug. 25, 2020)

"The BOP's position that a prisoner can complete the PATTERN program before January 15, 2022 with no benefit to the prisoner is contrary to the statutory language, not to mention the unfairness of such a result. Therefore, the Court concludes that Petitioner is entitled to habeas relief. The Court will direct the BOP to immediately apply Petitioner's Earned Time Credit..."

Hare v. Ortiz Case No. 20-14093,
2021 U.S. Dist. LEXIS 21270 (D. N.J. Feb. 4, 2021)

"The starting point for statutory construction is that "words generally should be interpreted as taking their ordinary, contemporary, common meaning...at the time Congress enacted the statute." Wisconsin Cent. Ltd. v. United States, 138 S. Ct. 2067, 2074 (2018)(quoting Perrin v. U.S. 444 U.S. 37, 42 (1979)). Courts must also bear in mind the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme". Util. Air Regulatory Grp. v. E.P.A., 573 U.S. 302, 320 (2014) (quoting FDA v. Brown & Williamson Tobacco Corp. 529 U.S. 120, 133 (2000) "When the words of a statute are unambiguous...judicial inquiry is complete." Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254 (1992)(quotation omitted). Agencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always give effect to the

unambigously expressed intent of Congress." Util. Air Regulatory Grp. 573, U.S. at 326 (quoting National Assn. of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 665 (2007) (quoting Chevron, U.S.A. Inc. v Natural Resources Defense Council, Inc. 467 U.S. 837, 843 (1984)). "if a statute is ambiguous and if the implementing agency's construction is reasonable, Chevron requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." Nat'l Cable & Telecommunications Ass'n Brand X Internet Servs. 545 U.S. 967, 980 (2005)(citing Chevron, 467, U.S. at 843-844, and n. 11)) With these principles in mind, the Court turns to the statutory language. When do Time Credit incentives for EBRR programs and productive activities begin: First, the Court must determine when prisoners can begin to earn incentives for participating in EBRR programs and PAs under the FSA. The statue provides that "[a] prisoner may not earn time credits...for an evidence based recidivism reduction program that the prisoner successfully completed...prior to the date of enactment of this subchapter..." 18 USC 3632(d)(4)(B)(i). The phrase "this subchapter" refers to subchapter D, the risk and needs assessment system. Subchapter D begins with the following provision:

(a) In general. Not later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review Committee, authorized by the First Step Act of 2018, shall develop and release publicly on

13

the Department of Justice website a risk and needs assessment
system (referred to in this subchapter as the "System")...18 USC
§3632(a).

Respondent agrees that subchapter D was enacted on December 21,
2018, the effective date of the FSA. Yet, Respondent urges the
Court to interpret "the date of enactment of this subchapter" in
§3632(d)(4)(B)(i) to mean January 15, 2020, as the BOP has
proposed, pending public comment for 28 C.F.R. §523.42(d)(1)).
(Surreply Dkt. No. 14 at 2, n. 1, citing 85 Fed. Reg. at 75272)
Respondent relies on another provision of the FSA for its
interpretation. Under 18 USC §(h)(1)(A), the BOP was not required
to "complete the initial intake risk and needs assessment for each
prisoner...and begin to assign prisoners to appropriate evidence-
based recidivism reduction programs based on that determination"
to wit, until 180 days after development and public release of the
system January 15, 2020.

The Court begins, as it must, with the ordinary meaning of "the
date of enactment of this subchapter" in §3632(d)(4)(B)(i).
Enactment means "the action or process of making into law."
ENACTMENT, Black's Law Dictionary (11th Ed. 2019). The FSA was
enacted on December 21, 2018, and nothing in subchapter D
indicates a different effective date for the subchapter.
Additionally, the same phrase, "the date of enactment of this
subchapter", appears in subdivision (a) "[n]ot later than 210 days
after the date of enactment of this subchapter" the BOP "shall

14

develop and release publicly...a risk and needs assessment

system". Two-hundred and ten days after December 21, 2018, the

date the FSA was enacted, is July 19, 2019. There is no dispute

that July 19, 2019, was the deadline for the BOP "to develop and

release publicly on the Department of Justice website a risk and

needs assessment system." See Goodman, No. CV 20-7582 (RMB), 2020

WL 5015613 at 3.


The Court finds no indication in the statute that the ordinary

meaning of "enactment of this subchapter" in subsection (d) should

not be consistent with the same phrase used in subsection (a).

Both subsections are within subchapter D and subsection (a)

unambiguously refers to December 21, 2018 as the date of enactment

of subchapter D. See Atl. Cleaners and Dyers v. United States, 286

U.S. 427, 433 (1932) (stating that there is rebuttable presumption

"that identical words used in different parts of the same act are

intended to have the same meaning")(citation omitted). Thus, 18

USC §3632(d)(4)(B)(1) unambiguously directs that "[a] prisoner may

not earn time credits..for an evidence based recidivism program

that the prisoner successfully completed...prior to" December 21,

2018. The Court, thus, need not engage in a Chevron analysis of 28

C.F.R. §523.42(d)(1). "[T]he Chevron court explained that

deference is not due unless a court employing traditional tools of

statutory construction is left with an unresolved ambiguity". Epic

Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1630 (2018) (quoting

Chevron, 467 U.S. at 843, n. 9)). There is no ambiguity here. As a

result, if Petitioner completed EBRR program or PA pursuant to the

15

FSA on or after December 21, 2018, he is entitled to earn Time
Credits.


Grounds For Relief


As shown above, Petitioner has a right to time credits due to him
under the First Step Act. If relief is not granted Petitioner will
likely spend more time in confinement than he is required to under
the law. Such a result would be a fundamental denial of due
process and a violation of Petitioner's rights.


Due process requires application of afforded statutory rights
granted by Congress and stands for the principle that "[m]inimum
due process rights attach to statutory rights." Dia v. Ashcroft
353 F. 3d 228, 239 (3rd Cir. 2003)(quoting Martin v Lewis, 92 F.
3d 195, 203, (3rd Cir. 1996).


A plaintiff must prove that he possessed a protected liberty (or
property) interest and he was deprived of that interest without
process to which he was constitutionally entitled. See Bd. of
Regents of State Colleges v. Roth 408 U.S. 564, 569 (1972). Here
Petitioner can show that he will potentially be wrongfully
deprives of his liberty without relief.


Petitioner's sentence ends on 03/04/2025. His good time credits
equal 472 days brings his release date to 11/18/2023. His home
confinement time per the Second Chance act 10% of his sentence

16

(10.5 months) makes his release date to home confinement 01/03/23.
His 12 months of FSA earned time credits applied to supervised
release brings his release date to home confinement to 01/03/22.
The FSA credits he has earned from 12/21/2020 until present and
will earn until his release to home confinement are 141 days, thus
making his release to home confinement date 08/30/2021.

Petitioner requests that this Court order the BOP to

1) apply 365 days of his earned time FSA credits to supervised
release thus increasing his supervised release from three years to
four years.

2) Order the BOP to transfer Petitioner to home confinement on or
before 8/30/2021 with the final home confinement date being
11/20/2022.

Respectfully Submitted;

P.O. Box 1000

Cresson, PA 16630


## Certificate of Service


Petitioner states that he is mailing this motion to the clerk of
courts for filing and that the government will be notified
electronically. Petitioner also states and herein declares under

penalty of perjury pursuant to 28 USC 1746 that all statements made in the enclosed motion are true and correct to the best of Petitioner's ability to recall.

Respectfully Submitted;